

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LANCE A. PHILLIPS** | § | Case No. 15-60641 |
| xxx-xx-4307 | § | |
| 131 CR 37, Tyler, Texas 75706 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| ANDREA WILSON | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 15-6024 |
| | § | |
| LANCE A. PHILLIPS | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

ON THIS DATE the Court considered the Motion for Summary Judgment in

Adversary Proceeding (the "Motion") filed by the Plaintiff, Andrea Wilson (the

"Plaintiff"), in the above-referenced adversary proceeding. The original complaint filed

in this adversary proceeding claims that the debt allegedly owed to the Plaintiff by the

Debtor-Defendant, Lance Phillips, should be declared nondischargeable pursuant to 11

U.S.C. § 523(a)(6), which excepts from discharge a debt "for willful and malicious injury

by the debtor to another entity or to the property of another entity." Upon due

consideration of the pleadings, the proper summary judgment evidence submitted by the

Plaintiff, and the relevant legal authorities, the Court concludes that the Plaintiff has demonstrated that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law that the debt owed to her by the Debtor-Defendant arising from the judgment issued by the 114th Judicial District Court in and for Smith County, Texas, should be declared nondischargeable under § 523(a)(6) of the Bankruptcy Code. This memorandum of decision disposes of all issues before the Court.[1]

## Factual and Procedural Background[2]

On June 1, 2009, the Plaintiff, Andrea Wilson, subleased a bedroom and bath in the apartment of the Defendant, Lance Phillips. A third party also subleased a third bedroom from Phillips and all three persons shared the common areas of the apartment.[3] On or around February 4, 2010, the Plaintiff and the other third-party tenant discovered hidden electronic equipment in the Defendant's bedroom. Upon further investigation, the Defendant's tenants then discovered cameras hidden throughout the apartment within otherwise inconspicuous devices, such as the smoke detectors, including cameras installed in the Plaintiff's private bedroom. These hidden cameras had been installed by

---

[1] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[2] The facts presented are those the Court believes to be uncontested or are imposed by applicable provisions of claim preclusion. They are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

[3] *Plaintiff's Original Petition* contained in the *Supplementation of Summary Judgment Record* [dkt #15 at 20-25].

the Defendant and its video fed into the Defendant's digital recording equipment in the Defendant's bedroom.  The Defendant used this equipment to record surreptitiously obtained video of the activities of the Plaintiff in her private bedroom.  The Plaintiff contacted the police, which led to the arrest of the Defendant. The Defendant was subsequently prosecuted by the State of Texas before the 114th Judicial District Court in and for Smith County, Texas (the "Criminal Case") which eventually resulted in the entry of a guilty plea by the Defendant for improper visual recording.[4]

On March 17, 2011, the Defendant, at a time he was represented by criminal counsel, waived his constitutional rights against self-incrimination and entered into a "Stipulation of Evidence," wherein the Defendant stipulated under oath in open court that various facts were "true and correct and constitute the evidence in this case."[5]  The Defendant stipulated that, with intent to invade the privacy of the Plaintiff, Andrea Wilson, he recorded, broadcast, and transmitted by videotape and electronic means a visual image of the Plaintiff at a location that was not a bathroom or private dressing room, without the consent of the Plaintiff.[6]  The Defendant further stipulated that he engaged in the videotaping of the Plaintiff without her consent with an intent to arouse or

---

[4]  *Id.* at 22-23.

[5]  *Stipulation of Evidence* in Criminal Case [dkt #9 at 8].  Based upon this Stipulation, the criminal court accepted the Defendant's guilty plea to the charge of improper visual recording and assessed a suspended sentence, along with other fines and terms of community supervision.  *See* dkt #9 at 9-25.

[6]  *Id.*

gratify his sexual desire.[7]  The Defendant further acknowledged under oath that his sworn statements contained in the Stipulation of Evidence "were made, signed, and entered into by the Defendant freely, intelligently, knowingly, and voluntarily."[8]

On February 3, 2012, after the criminal prosecution, the Plaintiff initiated a civil action against the Defendant arising from the same conduct before the 114th Judicial District Court of Smith County in cause no. 12-0373-B (the "Civil Action").[9]  The Civil Action alleged causes of action for intrusion and invasion of privacy, breach of contract, and breach of implied covenant of quiet use and enjoyment, and sought the imposition of actual and exemplary damages against the Defendant.[10]  The Defendant failed to answer or otherwise appear in the Civil Action.  The Plaintiff moved for entry of a default judgment in the Civil Action and tendered evidence, including certain deposition testimony of the Plaintiff regarding her damages, to the state court in support of that motion.[11]

On August 26, 2015, the 114th Judicial District Court in and for Smith County, Texas, entered a default judgment in favor of the Plaintiff and against the Defendant in

---

[7]  *Id.*

[8]  *Acknowledgment of Admonishment* in the Criminal Case [dkt #9 at 18].

[9]  *Plaintiff's Original Petition* contained in the *Supplementation of Summary Judgment Record* [dkt #15 at 20-25].

[10]  *Plaintiff's Second Amended Petition* contained in the *Supplementation of Summary Judgment Record* [dkt #15 at 3-8].

[11]  *Supplementation of Summary Judgment Record* [dkt #15 at 31-43].

the Civil Action.  The state court judgment recited that, based upon the Court's review of

evidence, the Plaintiff was entitled to a judgment against the Defendant in the sum of

$600,000.00, plus prejudgment interest in the amount of $96,600.00, together with

taxable court costs in the amount of $1,457.80.[12]   Of the $600,000 of damages awarded

in the Default Judgment, $200,000.00 was assessed for the Plaintiff's physical pain and

mental anguish in the past, $200,000.00 was assessed for the Plaintiff's physical pain and

mental anguish in the future, and $200,000.00 was assessed as an award of exemplary

damages.[13]  The Defendant did not appeal the Default Judgment in the Civil Action.[14]

On October 2, 2016, approximately six weeks after the entry of the Default

Judgment, the Defendant, Lance Phillips, filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code in this Court under case no. 15-60641.  On December

30, 2015, the Plaintiff filed a complaint alleging that the indebtedness owed by the

---

[12] *Default Judgment* contained in the *Supplementation of Summary Judgment Record* [dkt #15 at 44-45].

[13] *Id.*

[14] This Court is thus precluded from hearing any complaint regarding the propriety of the Default Judgment by the *Rooker-Feldman* doctrine, which prevents lower federal courts from reviewing a state court decision when the issues raised in the federal court would be "inextricably intertwined" with a state court judgment and the federal court would, in essence, be called upon to review the state court decision. *Davis v. Bayless*, 70 F.3d 367, 375-76 (5th Cir. 1995) (*citing United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)).  A claim entertained by a lower federal court is "inextricably intertwined" with those addressed in the state court "whenever the relief requested in the federal action would effectively reverse the state court decision or void its ruling."  *In re Popkin & Stern*, 259 B.R. 701, 706 (B.A.P. 8th Cir. 2001) (*quoting Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)); see also *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) [observing that "as we have noted in other cases, the *Rooker–Feldman* doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment"].  The doctrine recognizes that "judicial errors committed in state courts are for correction in the state court systems" through the appellate process. *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986).

Defendant to the Plaintiff arising from the entry of the Default Judgment should be declared nondischargeable as a debt arising from a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code.   The Debtor-Defendant filed an answer to the complaint.

On September 16, 2016, the Plaintiff filed the Motion for Summary Judgment under present consideration — arguing that, as a matter of law, the indebtedness owed to the Plaintiff by the Defendant arising from the Default Judgment should be declared nondischargeable as a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code.  The Debtor-Defendant failed to respond to the Plaintiff's Motion for Summary Judgment, thereby electing to forego any challenge to the asserted material facts.[15]

## Discussion

*Summary Judgment Standards and Process*

The Plaintiff brings her Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material

---

[15] After the time for any response in opposition to the summary judgment motion, the Defendant tendered to the clerk of this court, without reference to this adversary proceeding or the pending summary judgment motion, an Order of Expunction which, with little explanation, purports to grant an *ex parte* Petition for Expunction in the Smith County District Court criminal proceeding.  While the Defendant's eligibility for any expunction order might be questionable under the relevant statutes, its entry, even if valid, has no effect on the binding nature of the sworn statements of fact made by the Defendant during the criminal proceeding.

fact and the movant is entitled to judgment as a matter of law."[16]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[17]  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[18]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial.  If, as in this case, the burden of persuasion at trial is on the moving party, "that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial."[19]

If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the mere allegations or denials in its pleadings, but rather must

---

[16] FED. R. CIV. P. 56(a).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18] FED. R. CIV. P. 56(c).

[19] *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997); *Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 698 (S.D. Tex. 1997).

demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[20]  The substantive law will identify which facts are material.[21]  In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[22] or that there is merely "some metaphysical doubt as to the material facts."[23]  Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[24]  However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence;  rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[25]

The record presented is reviewed in the light most favorable to the non-moving party.[26]  "Where the record taken as a whole could not lead a rational trier of fact to find

---

[20]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[21]  *Id.*

[22]  *Calpetco 1981 v. Marshall Exploration, Inc*., 989 F.2d 1408, 1413 (5th Cir. 1993).

[23]  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[24]  *Jacobs v. City of Port Neches,*  7 F.Supp.2d 829, 833 (E.D. Tex. 1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[25]  *Anderson*, 477 U.S. at 248-49.

[26]  *Matsushita,* 475 U.S. at 587.

for the non-moving party, there is no 'genuine issue for trial.'"[27]  Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[28]  Essentially, if a non-movant fails to set forth specific facts that present a triable issue on any relevant issues, his claims should not survive summary judgment.[29]

With regard to the disposition of summary judgment motions in this case, the Court, in its scheduling order entered in this case on May 17, 2016, specifically incorporated Local District Court Rule CV-56.[30]  That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[31]  It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence."  With regard to the disposition of the motion, the rule states:

(c) **Ruling**.  In resolving the motion for summary judgment, the court will assume

---

[27] *Id.* at 587 (*citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

[28] *Anderson,* 477 U.S. at 248.

[29] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

[30] *Scheduling Order Arising from Management Conference* entered in this case on May 17, 2016 [dkt #7].

[31] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (citing E. D. Tex. Local R. CV-56(d)).

that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[32]

The Debtor-Defendant failed to file any response to the motion for summary judgment. It is widely recognized that Fed. R. Civ. P. 56 "does not impose a duty on a court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Quinn v. Roach*, 2007 WL 922235, at *3 (E.D. Tex. 2007) (citing *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996)). A non-movant must "articulate the precise manner in which evidence he sets forth supports his claims." Moreover, in designating specific facts, the non-movant must "go beyond the pleadings and use his own affidavits, . . . deposition[s], answers to interrogatories, and admissions on file." *Id*. (citing *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)). The Debtor-Defendant's failure to controvert any material fact asserted by the Plaintiff's motion and his failure to support any such contentions by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the Plaintiff in this case "are admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

In this case, the Plaintiff bears the ultimate burden as to the nondischargeability of the debt. Thus, the Plaintiff is entitled to a summary judgment only if there exists no

---

[32] E.D. TEX. LOCAL R. CV–56(c).

genuine issue of material fact as to each essential element under § 523(a)(6).  The motion

for summary judgment under consideration herein seeks judgment as a matter of law

through the application of collateral estoppel.  The Plaintiff claims that the facts as

established during the Criminal Case, combined with the facts establishing a right to an

entry of judgment in the Civil Action by the 114th Judicial District Court in and for Smith

County, Texas, form the basis for a determination that the underlying judgment debt is

nondischargeable in the Defendant's Chapter 7 bankruptcy case.  Resolving this question

requires that the Court first determine the applicability of the doctrine itself.  If collateral

estoppel applies, any relevant factual findings (i.e., related to the required elements for

nondischargeability) regarding the actions of the Defendant in this common set of

operative facts upon which the state court judgment is based should not be disturbed here.

The Court applies those findings to the required elements for nondischargeability to

ascertain what factual issues, if any, remain.   If collateral estoppel does not apply, the

Plaintiff's motion must be wholly denied.

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that

when an issue of ultimate fact has once been determined by a valid and final judgment,

that issue cannot again be litigated between the same parties in any future lawsuit.'"

*Schiro v. Farley*, 510 U.S. 222, 232 (1994) (quotations omitted).  In other words, "once

an issue is actually and necessarily determined by a court of competent jurisdiction, that

determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).  "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Id.* at 153-54.

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and satisfy the elements thereof.  *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotations omitted).  In other words, when an issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds.  *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).  While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.  *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738 (1994).  Thus,

federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997). Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit. *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (citing Tarter v. Metropolitan Sav. & Loan Ass'n, 744 S.W. 926, 927 (Tex. 1988). Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.– Dallas 2012, no pet.). "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

Particularly applicable to this dispute is the fact that the doctrine of collateral estoppel is applicable to facts determined in prior criminal litigation as well as in civil litigation. *Delete v. Albertson's, Inc*., 83 S.W.3d 827, 831 (Tex. App.— Texarkana 2002, no pet.). "A prior conviction may work a collateral estoppel in a subsequent (civil) proceeding if the identical issues for which estoppel is sought were litigated and directly determined in the prior criminal proceeding." *Johnston v. Am. Med. Intern*., 36 S.W.3d 572, 576 (Tex. App.—Tyler 2000, pet. denied) (citing *McCormick v. Texas Commerce Bank*, 751 S.W.2d 887, 889 (Tex. App.—Houston [14th Dist.] 1988, writ denied)). "Further, a plea of guilty, as opposed to a conviction after trial, also collaterally estops a plaintiff from relitigating his guilt, since a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime." *Id.* (citing *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 378, 384 (5th Cir. 1997)). As the Texarkana Court of Appeals confirmed in *Delese*, "a criminal defendant cannot litigate the issue of his guilt again in a civil action because a fully litigated issue should not be retried. When the issue is identical to the issue in the criminal case, because the plaintiff pleaded guilty, and because the determination of guilt was a critical and necessary part of the criminal judgment, the issue cannot be litigated again." 83 S.W.3d at 831; *see also*, *R.F. v. Texas Dept. of Family & Protective Services*, 390 S.W.3d 63, 71 (Tex. App.—El Paso 2012, no pet.); *In re Briggs*, 350 S.W.3d 362, 368 (Tex. App.—Beaumont 2011, pet. denied); *Deere & Co v. Dickerson (In re Dickerson),* 372 B.R. 827, 834 (Bankr. N.D. Miss. 2007) [observing that "as a general rule, collateral estoppel applies equally whether

the prior criminal adjudication was based on a jury verdict or a guilty plea"].   As one

recent bankruptcy decision observed,

> [a]though the elements of the crime have not been litigated, the issues have
> necessarily been judicially determined by the plea. Furthermore, a
> defendant pleading guilty has had a full and fair opportunity to litigate his
> case, even though he has elected not to contest the accusations. He should
> not expect the courts to look behind convictions based on such pleas in
> order to relieve [him] from civil consequences which may follow.

*Vyshedsky v. Soliman (In re Soliman)*, 539 B.R. 692, 700 (Bankr. S.D.N.Y. 2015)

(citations and quotations omitted).

In the context of issue preclusion, the terms "issue" and "fact" are interchangeable.

The purpose of the reviewing court is to determine the specific facts brought that were

already established through full and fair litigation.  As stated in *Fielder v. King (Matter of*

*King),* 103 F.3d 17 (5th Cir. 1997):

> Issue preclusion will prevent a bankruptcy court from
> determining dischargeability issues for itself only if 'the first
> court has made specific, subordinate, factual findings on the
> identical dischargeability issue in question . . . and the facts
> supporting the court's findings are discernible from that
> court's record.  Collateral estoppel applies in bankruptcy
> courts only if, *inter alia*, the first court has made . . . factual
> findings on the identical dischargeability issue in question –
> that is, an issue which encompasses the same prima facie
> elements as the bankruptcy issue.

*Id.* at 19 (citing *Dennis v. Dennis (Matter of Dennis),* 25 F.3d 274, 278 (5th Cir. 1994)

(brackets and quotations omitted).  While separate and distinct findings of fact by a state

**-15-**

trial court are preferable, factual findings need not be explicitly stated nor separately denominated in order for collateral estoppel principles to apply.  In the event that the state court judgment is conclusory and does not contain a detailed summary of factual findings, the court may also examine the evidence produced in the state court proceedings to support the judgment and determine whether the record of the state proceedings is sufficient to discern the subsidiary facts supporting the judgment.  *Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1257-58 (5th Cir. 1984); *Sierra Inv. Assoc. v. Tomlin (In re Tomlin)*, 2005 WL 6440629, at *5 (Bankr. N.D. Tex., Dec. 20, 2005) (citing *Dennis*, 25 F.3d at 278).  In other words, collateral estoppel under Texas law may be properly applied "with realism and rationality" through an examination of the state court proceeding to discern the subsidiary facts "necessarily decided" to reach a judgment in the first proceeding and which are germane to a determination of nondischargeability under the Bankruptcy Code.  *See, e.g., Fort Worth Hotel, L.P. v. Enserch Corp.*, 977 S.W.2d 746, 753-54 (Tex. App. – Fort Worth 2003, no pet.) [collateral estoppel properly applied to establish negligence of defendant even though factfinder did not make any specific finding that a particular act or omission caused an explosion].  However, it is imperative that the bankruptcy court be able to discern a sufficient factual basis to support the conclusions recited in the state court judgment.  *Shuler,* 722 F.2d at 1257-58.  As the party asserting the preclusive effect of the findings arising from the Criminal Case and the Civil Action against the Defendant, the Plaintiff has the burden of proof on all elements of collateral estoppel.

In this case, the summary judgment record clearly demonstrates that identical facts were involved in the prosecution of the Criminal Case against the Defendant and the prosecution of the Civil Action by this Plaintiff that resulted in the entry of a civil judgment.  The same set of operative facts was essential both to the resolution of the Criminal Case based upon the Defendant's guilty plea and to the entry of the Default Judgment in the Civil Action.  This Plaintiff was the criminal victim and this Defendant was the admitted perpetrator in the Criminal Case and these two specific parties were the named adversaries in the Civil Action.  The sole remaining question is whether those common facts were fully and fairly litigated.  The Court concludes that they were.

Even though the Defendant never made a formal appearance in the Civil Action, thereby creating a "no-answer" default, the Plaintiff did not rely upon the general recognition that all alleged facts under such circumstances were deemed "admitted" by the Defendant.  Instead, she relies upon the preclusive effect arising from the Defendant's guilty plea to establish the content and nature of the Defendant's actions which undergirded the criminal prosecution and which created the basis for the civil liability to her.  As set forth previously, Texas law on issue preclusion clearly holds that a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime.  Those admitted facts establish the basis of liability in the Civil Action and, in supplementation thereto, she submitted sworn deposition testimony to the state court to buttress her claim of damages as asserted in her state court petition.  Upon consideration of those admitted facts and the testimony regarding the damages inflicted

-17-

upon the Plaintiff arising from those admitted facts, the state court awarded a civil

judgment in Plaintiff's favor and against the Defendant in the aggregate sum of

$698,057.80, plus interest, which included assessments for the Plaintiff's physical pain

and mental anguish, as well as an assessment of exemplary damages, as a result of the

Defendant's admitted conduct.  Under the totality of these circumstances, including the

fact that the Plaintiff supplemented the established facts arising from the Criminal Case

with additional testimony to the state court in the Civil Action regarding the infliction of

damages upon her arising from the Defendant's criminal conduct, the Court concludes

that the collective issues raised and decided in the Criminal Case and the Civil Action

have been fully and fairly litigated for the purposes of collateral estoppel and that the

Defendant is accordingly collaterally estopped from relitigating those factual

determinations that necessarily support the Default Judgment issued in the Civil Action.

### Section 523(a)(6): Debt Arising from Willful and Malicious Injury

The Court must now determine whether the factual determinations established

under the principles of issue preclusion satisfy the elements of the Plaintiff's claim for

nondischargeability under § 523(a)(6).  The United States Supreme Court has offered its

opinion as to what types of debts Congress intended to except from discharge pursuant to

§ 523(a)(6).[33]  In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 (1998), the Supreme Court

---

[33] Section 523(a)(6) of the Bankruptcy Code provides as follows:

(a) A discharge under Section 727 ... of this title does not discharge an individual debtor
from any debt ...

**-18-**

stated that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."  Moreover . . . , the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."  RESTATEMENT (SECOND) OF TORTS § 8A, comment *a*, p. 15 (1964).

*Geiger* at 977.  The Supreme Court concluded that negligent or reckless acts are not sufficient to establish that a resulting injury is "willful and malicious" and that, therefore, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  *Geiger* at 978.

In *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit analyzed the *Geiger* ruling in an effort to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury.  The *Miller* court determined that a "willful  . . .  injury" is established under

---

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

§ 523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action or (2) there is a subjective motive to cause harm by the party taking a deliberate or intentional action.  It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under § 523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that malice element.  *Id.* at 604-06.

The "objective substantial certainty" prong "is a recognition of the evidentiary reality that a defendant in a bankruptcy context rarely admits any prior action was taken with the intent to cause harm to anyone.  A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x. 360, 362 (5th Cir. 2007).[34]

In this case, the summary judgment evidence clearly establishes that the Defendant admitted under oath all of the elements of Texas Penal Code § 21.15(b), as it existed at the time of prosecution, including the admission under oath that he had recorded visual images of the Plaintiff in her bedroom without her consent for his own sexual arousal or

---

[34] "Injuries covered by § 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by § 523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

gratification.  From any reasonable person's standpoint, such actions, when taken, were substantially certain to cause harm to the Plaintiff.  Such certainty explains the rationale as to why such actions are criminally punishable under the applicable sections of the Texas Penal Code.  It was those particular actions of the Defendant, to which he had already admitted, that later provided a substantial portion of the evidentiary foundation for the entry of judgment in the Civil Action.  Indeed, the uncontested evidence to the 114th Judicial District Court in support of the Plaintiff's Civil Action demonstrates that the Plaintiff was, in fact, significantly harmed by the Defendant's actions.  It was that evidence that was evaluated by the state court and resulted in the rendition of judgment against the Defendant in that Civil Action.   Thus, this Court concludes that the injuries suffered by the Plaintiff, for which liability was assessed against the Defendant in the Default Judgment, were substantially certain to result from the Debtor-Defendant's intentionally wrongful conduct that inflicted damages upon the Plaintiff and that eventually resulted in his guilty plea to a felony charge.  Therefore, the indebtedness imposed against the Debtor-Defendant by the 114th Judicial District Court in and for Smith County, Texas through the rendition of its Default Judgment against him should be declared nondischargeable under § 523(a)(6).

### Conclusion

For the reasons stated, the Court concludes that the debt owed by the Debtor-Defendant, Lance Phillips, to the Plaintiff, Andrea Wilson, as established by the default

judgment granted by the 114th Judicial District Court, is therefore excepted from

discharge in its entirety as a debt arising from a willful and malicious injury inflicted by

the Defendant pursuant to 11 U.S.C. § 523(a)(6).  An appropriate order and judgment will

be entered which is consistent with this opinion.

Signed on 01/09/2017

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE